*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* L. A. Decker, Minor.

UNPUBLISHED
June 22, 2023

Nos. 363531, 363563
Wayne Circuit Court
Family Division
LC No. 2019-002052-NA

Before: SWARTZLE, P.J., and CAVANAGH and LETICA, JJ.

PER CURIAM.

Petitioner removed respondent-mother's biological child from her care because she had her parental rights terminated to three other children in Florida, substance-abuse issues, mental-health issues, and she left the child with newly met individuals for extended periods of time. Petitioner also removed the same child from respondent-father's care because he had abandoned the child after he was incarcerated. The trial court terminated the parental rights to both respondents. We affirm.

## I. BACKGROUND

Respondent-father was incarcerated when the child was 14-months old, and he stated that he left the child in the care of respondent-mother along with $160,000 in cash, a home, and some vehicles. Since his incarceration, however, respondent-father did not have any contact with the child until this case, and respondent-mother was no longer living in the house that respondent-father had left for her.

Petitioner provided both respondents with separate treatment plans to help rectify their barriers to reunification with the child. Respondent-mother's treatment plan included parenting classes, a parenting monitor, parenting-time visits with the child, random-drug screens, individual and family therapy, and psychological and psychiatric evaluations over a two-year period. Respondent-father's treatment plan included substance-abuse therapy, telephone visitations with the child, and parenting classes. Respondent-father's plan considered that he was incarcerated for conspiracy to distribute certain drugs and money laundering, until his release date in 2027. Respondent-father testified, however, that his earliest release date was June 2024, if he was able to receive a compassionate release for the elderly.

Respondent mother was able to comply partially with her treatment plan. She sought individual therapy and parenting classes voluntarily, and she was able to complete a psychiatric and psychological evaluation. Despite her efforts, however, she was unable to benefit from the services because her participation with family therapy was terminated when she missed multiple appointments. Further, respondent-mother cancelled every home-inspection appointment with petitioner and she failed to verify that she had suitable housing or a stable income to support the child.

Additionally, respondent-mother missed 27 of the 100 offered parenting-time visits with the child. Petitioner reported that respondent-mother's inconsistent attendance had a negative impact on the child, as he would get anxious and distressed regarding whether respondent-mother would show up. When respondent-mother did attend her parenting-time visits with the child, she would often make promises that she could not keep or discuss past traumatic incidents with the child after being told that she could not do that.

Regarding respondent-father, petitioner reported that he did not complete the parenting classes as they were not offered in the prison in which he was incarcerated. He was able to participate in classes for coping and changing his behavior, which he did complete. Respondent-father did not demonstrate that he benefitted from those classes, however, as he broke the rules for the prison in which he was incarcerated and lost phone privileges as a result. Consequently, respondent-father missed five months of phone calls with the child. Further, respondent-father had not financially or materially supported the child since he was incarcerated, even though he stated that he left respondent-mother and the child with $160,000, a home, and some vehicles. Respondent-father's plan to support the child was to live on money that he believed he would receive from a pending lawsuit.

It was reported that the child was doing well with his caregiver during the pendency of the case, and the caregiver had expressed a desire to adopt the child. The child was up to date on his immunizations and was able to receive oral surgery for several teeth that had extreme cavities. Petitioner reported that the child did not have a bond with respondent-father because respondent-father had been incarcerated since the child was 14-months-old. There was a bond between respondent-mother and the child, but that relationship became strained when respondent-mother did not consistently attend her parenting time visits. It was reported that the child was bonded with his caregiver, who provided him stability and permanency.

The trial court terminated respondents' parental rights to the child more than 25 months after the initial dispositional order was entered. The trial court found that there was clear and convincing evidence to support the termination of respondent-mother's parental rights under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j), and respondent-father's parental rights under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), (h), and (j). Additionally, the trial court found that the child needed permanency, stability, and finality to this situation and, thus, termination was in the child's best interests.

Both respondents now appeal.

## II. ANALYSIS

## A. STATUTORY GROUNDS

Both respondents argue that the trial court erred when it found statutory grounds to terminate their parental rights. "This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011).

MCL 712A.19b(3)(c)(*i*) provides as follows:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

MCL 712A.19b(3)(c)(*i*) is appropriate "when the conditions that brought the children into foster care continue to exist despite time to make changes and the opportunity to take advantage of a variety of services." *In re White*, 303 Mich App at 710 (cleaned up).

There were more than 182 days between the initial dispositional order for each respondent and the final termination hearing. Therefore, the 182-day statutory period was satisfied.

Regarding respondent-mother, the conditions that led to the adjudication of the child from her care included her inability to parent the child appropriately as well as her mental-health issues. Respondent-mother's treatment plan included parenting classes, a parenting monitor, parenting-time visits with the child, random-drug screens, individual and family therapy, and psychological and psychiatric evaluations over a two-year period. The record demonstrates that respondent-mother was inconsistent with her participation in the services that she was provided. She did not consistently attend her parenting-time visits with the child, and she did not complete her therapy sessions as referred by petitioner. Petitioner's caseworkers also reported that respondent-mother did not show any improvement in her parenting skills because she would discuss inappropriate topics with the child during the visits that she did attend, and she would make the child promises that she would not, or could not, keep.

Given respondent-mother's inconsistent engagement with the services that she was provided, we are not left with a definite and firm conviction that a mistake has been made. See *In re Ellis*, 294 Mich App at 33. "[T]he totality of evidence amply" supports that respondent "had not accomplished any meaningful change" in the conditions that led to adjudication because she had not addressed the conditions that led to her mental-health concerns and she continued to have

difficulty parenting the child by not consistently attending the parenting-time visits. *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009). Therefore, the record supports that the trial court did not clearly err when it found by clear and convincing evidence that respondent-mother's conditions continued to exist.

Regarding respondent-father, the conditions that led to the adjudication of the child from his care included his abandonment of the child. Respondent-father's treatment plan included substance-abuse therapy, telephone visitations with the child, and parenting classes. Even though respondent-father was limited in his ability to complete some of the treatment plan because he was incarcerated, his behavior while incarcerated resulted in him losing phone privileges to communicate with the child. Additionally, respondent-father was unable to provide financial care for the child while he was incarcerated. The record demonstrates that respondent-father was not consistent in his effort to maintain contact with the child, and we are not left with a definite and firm conviction that a mistake has been made. See *In re Ellis*, 294 Mich App at 33. Therefore, the record supports that the trial court did not clearly err when it found by clear and convincing evidence that respondent-father's conditions continued to exist.

Because one statutory ground for termination is established for each respondent, "we need not consider whether the other grounds cited by the trial court also supported the termination decision." *In re Foster*, 285 Mich App 630, 633; 776 NW2d 415 (2009).

## B. BEST INTERESTS

Both respondents further argue that the trial court erred by finding that the termination of their parental rights was in the best interest of the child. "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The trial court's ruling regarding best interests is reviewed for clear error. *In re Schadler*, 315 Mich App 406, 408; 890 NW2d 676 (2016). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *In re Ellis*, 294 Mich App at 33.

"The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App at 713. With respect to the child's best interests, this Court places its focus on the child rather than the parent. *In re Moss*, 301 Mich App at 87. "In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App at 41-42 (cleaned up). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714.

Regarding respondent-mother, there was no dispute that respondent-mother had a bond with the child. During the pendency of the case, however, respondent-mother failed to demonstrate

that she could provide the child with permanency and stability as evidenced by her inconsistent parenting-time visits. Further, respondent-mother was unable to verify that she had appropriate housing suitable for the child, or an income that would support the child's needs.

This is in contrast with the child's caregiver, who was able to provide the child's basic needs as well as give the child permanency and stability through adoption. Similar to the bond that the child has with respondent-mother, it was also reported that the child was bonded to the caregiver. Respondent-mother's unwillingness to take consistent steps to demonstrate that there would be finality to her barriers to reunification demonstrates that the termination of her parental rights was in the child's best interests. See *In re Olive/Metts Minors*, 297 Mich App at 41-42.

Regarding respondent-father, petitioner reported that the child had no bond with him because respondent-father had not been in the child's life since the child was 14-months old. Respondent-father also failed to demonstrate that he would be able to communicate with the child after respondent-father's behavior resulted in his loss of phone privileges while incarcerated. Further, respondent-father did not demonstrate that he could provide the child with stability and permanency because he did not have a consistent plan to care for the child upon his release from incarceration.

This is again in contrast to the permanency, stability, and bond that the child's caregiver was giving the child. Respondent-father's inability to take consistent steps to demonstrate that there would be finality to his barriers to reunification demonstrates that the termination of his parental rights was in the child's best interests. See *In re Olive/Metts Minors*, 297 Mich App at 41-42.

Given the evidence presented in this case, we are not left with a definite and firm conviction that a mistake has been made. See *In re Ellis*, 294 Mich App at 33. Therefore, the record supports that the trial court did not clearly err when it found by a preponderance of evidence that termination and adoption was in the child's best interests.

## C. GUARDIANSHIP

Lastly, respondent-father argues that the trial court erred by not placing the child in a guardianship that would have allowed respondent-father to be reunited with the child upon his release from incarceration. Respondent-father did not raise this issue in the trial court and, thus, it is unpreserved for appellate review. This Court reviews an unpreserved issue for plain error affecting substantial rights. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). An error affects substantial rights if it affected the outcome of the proceedings. *Id*. at 9. "When plain error has occurred, reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id.* (cleaned up).

A guardianship may only be considered when a child cannot be returned to a parent, but termination is "clearly not in the child's best interests." *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). According to MCL 722.873(c), a child is eligible to receive guardianship assistance only when reunification and placement of the child for adoption are not appropriate

permanent options. In this case, the child's caregiver testified that she was willing to adopt the child, and the trial court found that termination of respondent-father's parental rights was in the child's best interests as stated above. Therefore, the trial court's failure to consider guardianship did not affect the outcome of the proceedings and respondent-father's argument is without merit.

## III. CONCLUSION

The trial court did not err when it found clear and convincing evidence that a statutory basis existed to terminate respondents' parental rights because both respondents displayed inconsistent participation to rectify their barriers to reunification. Similarly, a preponderance of the evidence supports the trial court's finding that termination of respondents' parental rights was in the child's best interests.

Affirmed.

/s/ Brock A. Swartzle
/s/ Mark J. Cavanagh
/s/ Anica Letica